UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN RAY *et al.*,

        Plaintiffs,

    v.                                                             CAUSE NO. 3:19-CV-711 DRL-MGG

RAJ BEDI REVOCABLE TRUST,
Vikram Bedi, trustee,

        Defendant.

## OPINION & ORDER

Two individuals evenly owned two Indiana corporations, C.F.B., Inc. and C.F.B. Real Estate Corporation. One died. The surviving shareholder sought to purchase the other's shares (now owned in trust after his death). Buy-sell agreements established procedures for valuation. The valuation became contested. The trust wanted more than what the surviving shareholder would pay.

Unresolved, the trust sued in Michigan state court. The case proceeded in Michigan until the state court ordered arbitration and appraisal before the trust could pursue its claims. Two fronts for litigation were not enough, so the surviving shareholder (and two corporations) filed a declaratory judgment action in Indiana state court. They wanted answers about share valuation, qualifications of arbitrators, and details about alternative valuation procedures. The trust removed the case here.

Both sides now want this court to abstain—they just disagree how. The court has been invited to this bout only to be asked immediately to leave once it decides which door will serve as its exit. That alone favors federal abstention, as the thrust of the argument now is which abstention doctrine the court should use to halt this case—not to decide a controversy of consequence that will actually move the parties closer toward a resolution of their buyout dispute. A choice of abstention doctrines is not the intended purpose of the Declaratory Judgment Act. The court dismisses this case.

BACKGROUND

Raj Bedi and John Ray were each 50 percent shareholders in C.F.B., Inc. and C.F.B. Real Estate Corp., two Indiana entities. ECF 2 ¶ 11. On September 18, 2000, Raj Bedi and John Ray executed buy-sell agreements for C.F.B. and C.F.B. Real Estate shares. Both agreements state:

> 7.      <u>Death of a SHAREHOLDER</u>. Upon the death of either SHAREHOLDER, the other SHAREHOLDER may purchase from the estate of the deceased SHAREHOLDER and the personal representative of the estate of the deceased SHAREHOLDER'S estate shall sell, surrender, and transfer to the other SHAREHOLDER all shares of the CORPORATION, or any interest therein, owned by the deceased SHAHOLDER at the time of his death. The terms and purchase price for the shares shall be in accordance with the provisions of paragraph 10 of this Agreement and shall be paid to the estate of the said deceased SHAREHOLDER.

ECF 5-5 ¶ 7; ECF 5-6 ¶ 7. Indiana law governs these contracts. ECF 5-5 ¶ 35; ECF 5-6 ¶ 35.

The agreements identify two different methods for calculating the value of C.F.B. and C.F.B. Real Estate shares in the event the shareholders are unable to agree on their value. ECF 5-5 ¶ 10(A); ECF 5-6 ¶ 10(A). The C.F.B. agreement contemplates arbitration, where each shareholder chooses an arbitrator; if the two arbitrators do not agree, the party-arbitrators appoint a third arbitrator, and a majority decision by the three arbitrators becomes binding. ECF 5-5 ¶ 10(F). The C.F.B. Real Estate agreement envisions an appraisal process whereby each shareholder chooses a "competent real estate and personal property appraiser," and the two party-appraisers then choose a third appraiser. ECF 5-6 ¶ 10(A). The three appraisers decide the share value by averaging the two written appraisals that are closest in value. *Id.*

Raj Bedi passed away in 2017, leaving the Raj Bedi Revocable Trust the 50 percent owner of C.F.B. and C.F.B. Real Estate stock. ECF 2 ¶¶ 13-14. Mr. Ray exercised his rights under Paragraph 7 of the buy-sell agreements and made an offer to purchase the Trust's shares. ECF 5-7. Mr. Ray offered $2,288,000 for the 250 shares in C.F.B. and an additional $486,691 for the 100 shares in C.F.B. Real Estate. *Id.* Vikram Bedi, as trustee, rejected both offers and counteroffered to sell the shares in C.F.B. for $2,802,206.39 and the shares in C.F.B. Real Estate for $1,904,230. ECF 1-4. Mr. Ray rejected the

2

counteroffer and maintains that the shares are worth the values listed in his original offer. Therein lies the dispute over valuation.

In May 2018, Mr. Bedi, individually and as trustee, filed suit in Michigan state court against Mr. Ray, C.F.B., C.F.B. Real Estate, and several other parties. ECF 5-8. The complaint alleged breach of contract, shareholder oppression, breach of fiduciary duty, and conspiracy to deprive the Trust of the fair value of its interests in C.F.B. and C.F.B. Real Estate. *Id.* The Trust requested the court award it the share price for C.F.B. and C.F.B. Real Estate. *Id.* In response, Mr. Ray, C.F.B., and C.F.B. Real Estate filed summary disposition motions. All claims against them were dismissed, albeit without prejudice. ECF 5-3. The court dismissed the claims as premature because the Trust had not followed the buy-sell agreements' arbitration/appraisal provisions. *Id.* The Michigan court further ordered the parties to engage in the valuation processes. *Id.* at 5. In a later order, the Michigan court tolled the statute of limitations as to all claims dismissed without prejudice so that arbitration and the appraisal process could unfold without prohibiting the refiling of these claims once these alternative dispute resolution procedures concluded. ECF 5-9 ¶ 7.

The parties soon discovered they disagreed about the proper procedure for the valuation processes. To settle these disputes, Mr. Ray and the C.F.B. entities informed the Michigan court during a hearing on June 17, 2019 that they would seek declaratory judgment from either the Indiana Commercial Court or this court.[1] ECF 17-4 at 20:15-22.

On July 30, 2019, the Trust filed a motion to compel court supervision over the valuation processes with the Michigan state court. ECF 5-12. The motion requested the court to supervise the valuation processes and specifically to order (1) that the Trust's chosen appraiser, Mauricio Kohn, was

---

[1] Mr. Ray appeared at the June 17 hearing to clarify that Mr. Ray, C.F.B., and C.F.B. Real Estate were all "out of [the] case" and that the Trust would have to "re-serve [them], file a new action against [them] in order to bring [them] back" into court. ECF 18-2 at 12:17-22. The Michigan court agreed that the Trust would need to refile their claims following the valuation processes. *Id.* at 12:23.

competent to serve in such a role under the buy-sell agreement, and (2) that Mr. Ray pay his original offer—$2,774,691—before the valuation was complete (an "interim buyout") and allow the Trust to seek additional payment in the event the share value was determined higher than the offer. *Id.*

One week later, on August 7, 2019, Mr. Ray, C.F.B., and C.F.B. Real Estate filed this action for a declaratory judgment against the Trust in Elkhart Superior Court, Indiana, marked for the commercial court docket. ECF 2. The complaint requested a judgment "[d]etermining, fixing, declaring and enforcing the terms and provisions" of the buy-sell agreements and "[e]stablishing and implementing appropriate procedures for the performance of, and compliance with, their respective rights, duties, obligations, responsibilities, and legal relations under" the agreements. *Id.* The complaint alleged that the parties "disagree[d] as to the value of the shares" and sought a declaratory judgment about the "rights and obligations of the parties under the [] Agreement[s], timelines, valuation of shares, purchasing procedures, qualifications and competency of arbitrators and appraisers, and details regarding the arbitration and appraisal process." *Id.* ¶¶ 23, 26, 31, 31.

On December 9, 2019, though the Michigan state court denied the pending motion for supervision, it decided one of the issues now being presented to this court, saying it was the court's "opinion that Mauricio Kohn is competent as a real estate appraiser" under the C.F.R. Real Estate buy-sell agreement. ECF 28-1. The Michigan state court denied the defendant's request to order Mr. Ray to pay an interim amount apparently because the issue was before this court, *id.*, though it appears issues of valuation are actually before the arbitrators and appraisers, and no party cites to any contractual provision that this court should interpret to authorize an interim payment.

Turning to the procedural history of this federal declaratory action, the Trust removed the complaint from the Indiana Commercial Court based on diversity jurisdiction. The Trust promptly moved to dismiss or stay this action, asking the court to abstain. In response, Mr. Ray and the C.F.B. entities filed a motion to remand, asking this court to abstain on different grounds.

STANDARD

In this case, the parties do not dispute the court's subject matter jurisdiction; rather, they argue that the court should abstain from exercising jurisdiction over this lawsuit. A district court has a near-unwavering obligation to hear claims within its jurisdiction. *See R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 716 n.6 (7th Cir. 2009). That said, several judicially-created doctrines permit the court, in narrow circumstances, to abstain from exercising its jurisdiction, *see Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018), including when federal jurisdiction would disrupt state efforts to establish sound policy on substantial public concerns—what courts call *Burford* abstention, named after *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Federal courts are separately imbued by statute with the discretion to decline jurisdiction in certain circumstances, as is the case under the *Wilton/Brillhart* doctrine. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). This discretion comes from the text of the Declaratory Judgment Act, which states that federal courts "may" declare the rights of parties, not that they "must" do so. 28 U.S.C. § 2201(a). Certain types of questions are appropriate for declaration, whereas others are not, and there sits the second debate today.

While abstention is certainly the exception, not the rule, abstention doctrine cautions that a federal court "may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts." *Courthouse News*, 908 F.3d at 1070-71 (quoting *SKS & Assoc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010)); *see also Brillhart*, 316 U.S. at 495 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). In deciding whether to abstain, the court is generally concerned with principles of equity, comity, and federalism—those principles that respect federal and state relations. *Dart*, 619 F.3d at 676.

DISCUSSION

A.    *Burford Abstention is Inapplicable, So Remand is Not Warranted.*

Mr. Ray and the C.F.B. entities ask this court to remand the case to the Indiana Commercial Court under the *Burford* abstention doctrine. Under the *Burford* doctrine, "where timely and adequate state court review is available," a federal district court should decline to exercise its jurisdiction when (1) the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result" in the current case, or (2) the federal case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989); *see generally Burford*, 319 U.S. 315 (1943). Mr. Ray and the C.F.B. entities argue that both types of *Burford* abstention apply to this declaratory action.

*Burford* abstention should be applied only when federal review would "disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" *New Orleans*, 491 U.S. at 362; *accord Kelly Servs., Inc. v. Johnson*, 542 F.2d 31, 32 (7th Cir. 1976) ("[*Burford*] compels federal courts to stay their hand lest they provoke needless conflict with the administration by a state of its own affairs."). As cautioned, "*Burford* represents an extraordinary and narrow exception" to the court's virtually unflagging duty to exercise its jurisdiction. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

For the first type of *Burford* abstention to apply, the claims must relate to some local public policy concern. *See Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 362 (7th Cir. 1998) (finding land use a local public policy concern). Even where an issue is of public concern, *Burford* abstention is "rarely, if ever, appropriate when the state law to be applied appears to be settled." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States.*, 424 U.S. 800, 815 (1976)) (internal quotations removed).

Mr. Ray and the C.F.B. entities argue that the Trust is advocating for the creation of a new equitable remedy when shareholders disagree about the value of shares under a buy-sell agreement for an Indiana corporation. They further argue that the interim buyout requested by the Trust would be a sweeping policy declaration, impacting Indiana corporations at large. The Trust disagrees, arguing that this interim buyout is nothing more than specific performance of a contract, not relating to any Indiana policies concerning corporations.

The court does not find an appropriate public policy concern to warrant *Burford* abstention. While a state might have an important interest in uniform policy concerning its corporations, *see Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (applying *Burford* to claims of corporate dissolution "given the comprehensive regulation of corporate governance and existence by New York"), the claims here don't ostensibly implicate any of Indiana's corporate regulations. According to Indiana law, buy-sell agreements are treated as contracts controlling the conveyance of personal property. *See F.B.I. Farms, Inc. v. Moore*, 798 N.E.2d 440, 445 (Ind. 2003). "Apart from any statutory requirements, [buy-sell agreements] are to be read, like any other contract, to further the manifest intention of the parties." *Id.* at 445-46.

The *Burford* doctrine is inspired by concerns of federalism, not singular contract rights. *See Int'l Coll. of Surgeons*, 153 F.3d at 361. The parties seek a declaration about their respective rights and obligations under two buy-sell agreements. In fact, Mr. Ray and the C.F.B. entities state in their complaint that "[t]his action concerns questions of contract interpretation," ECF 1 ¶ 15, and request the court to "establish[] and implement[] appropriate procedures for the parties'" and declare their "respective rights, duties, obligations, responsibilities, and legal relations under the [agreements]," ECF 1 ¶¶ 27(D), 35(D). The interpretation of two contracts would not "transcend the result" of this case or likely affect anything other than the rights of these parties. This is not one of the "essentially local problems" that would disrupt the balance of federalism, *Quackenbush*, 517 U.S. at 728; this is

merely the interpretation of contracts between the parties, the effect of which would not reasonably be felt by those not bound by their terms.

Turning to the second type of *Burford* abstention, all parties argued their positions based on the four-factor test articulated in *Hartford Cas. Ins. v. Borg-Warner Corp.*, 913 F.3d 419 (7th Cir. 1990). The Seventh and Tenth Circuits have doubted the validity of these factors following the United States Supreme Court's decisions in *New Orleans* and *Quackenbush*. *See Hammer v. U.S. Dept. of Health & Human Servs.*, 905 F.3d 517, 531 (7th Cir. 2018); *Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs.*, 529 F. Appx. 886, 896-97 (10th Cir. 2013). This court need not lend more voice to this chorus because the plaintiffs have not met an essential precursor to *Burford* abstention—a special state forum.

The existence of a special forum is a "prerequisite of, not a factor in, the second type of *Burford* abstention." *Hammer*, 905 F.3d at 531. The plaintiffs must do more than show a regulatory regime; they must demonstrate that Indiana offers a special "forum in which [the] claims may be litigated[.]" *Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 323 (7th Cir. 1991). This forum must have specialized expertise, standing in a "special relationship of technical oversight or concentrated review to the evaluation of those claims." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011) (*Burford* did not apply because environmental claims could be heard in courts of general jurisdiction throughout the state); *see also Int'l Coll. of Surgeons*, 153 F.3d at 364 (*Burford* did not apply because any court of general jurisdiction could review final administrative decisions).

Mr. Ray and the C.F.B. entities ask the court to recognize the newly created Indiana Commercial Court as one special forum that might merit *Burford* abstention. After all, the Indiana Supreme Court sought to create a venue specialized in complex commercial matters. The commercial court was designed to promote the efficient resolution of numerous commercial disputes including, for example, the dissolution or liquidation of a business entity and UCC transactions between two or more businesses. *In re Indiana Commercial Courts*, 121 N.E.3d 537, 539 (Ind. 2019).

While the commercial court is certainly intended to "enhance the accuracy, consistency, and predictability of judicial decisions in commercial cases," *id.* at 537, it is by no means the exclusive forum for these matters. Cases are not automatically assigned to the commercial court docket; instead, parties must identify the case as intended for the docket by filing an "identifying notice," to which another party may file a "refusal notice" and block the case from proceeding in the commercial court. *Id.* at 541. The commercial court is a mere option for parties seeking a court with particular expertise in commercial matters. Parties are otherwise free to file their suits in any Indiana state court of general jurisdiction.

The Indiana Commercial Court undoubtedly has expertise in a broad range of commercial matters; but, given that the same issues can be heard by courts of general jurisdiction, it is not the kind of regulatory regime calling for *Burford* abstention. *See New Orleans*, 491 U.S. at 362 ("*Burford* is concerned with protecting complex state administrative processes from undue federal interference"); *Adkins*, 644 F.3d at 504 (courts of general jurisdiction precluded *Burford* abstention); *Int'l Coll. of Surgeons*, 153 F.3d at 364 (same); *see also Hammer*, 905 F.3d at 531 ("A court may abstain under this second type of *Burford* abstention 'when principles of federalism warrant deference to a state's regulatory regime.'").

In the progenitor case, *Burford v. Sun Oil Co.*, 319 U.S. 315, 320-25 (1943), Texas had developed a comprehensive regulatory regime for the oil and gas industries that was administered by the Texas Railroad Commission. Texas had also created a particularized system of judicial review, vesting a single county with jurisdiction to hear appeals from the Commission. *Id.* at 320. Because Texas channeled all Commission appeals to one county for purposes of uniformity, that court had become a specialized forum specially equipped to handle those cases. *Id.* at 332-34; *see also Adkins*, 644 F.3d at 503. This circuit has held that, for *Burford* to apply in this context, judicial review must be concentrated in a few particular courts. *Adkins,* 644 F.3d at 505.

Although the Indiana Supreme Court has indeed chosen a select few courts—six particular judges—to handle the commercial court docket, it chose not to vest those judges with exclusive jurisdiction to review commercial claims. *In re Indiana Commercial Courts*, 121 N.E.3d at 538. Unlike *Burford*, federal review of singular contract terms would not have a "disruptive effect" on state management of local matters as this court's review would not be functionally distinct, save for principles of federalism, from the review conducted by any Indiana court of general jurisdiction. *See Colorado River*, 424 U.S. at 815. Because the Indiana Supreme Court has declined to concentrate judicial review of these commercial claims in a particular court of review, Mr. Ray and the C.F.B. entities have not established a prerequisite to this type of *Burford* abstention. *Cf. Hammer*, 905 F.3d at 534 (finding a specialized forum because Illinois had empowered only two courts to oversee insurance rehabilitation and liquidation).

*Burford* abstention is a narrow exception to this court's duty to exercise its jurisdiction. *Quackenbush*, 517 U.S. at 728. Based on the circumstances here, the court does not find that either variation of *Burford* abstention applies to this case. The court must deny the motion to remand.

B.     *The Wilton/Brillhart Doctrine Guides the Court to Dismiss this Case.*

The Trust urges the court to dismiss or stay this action under the *Wilton/Brillhart* doctrine. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Unlike abstention doctrines, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010); *see also R.R. Street & Co., Inc.*, 569 F.3d at 714 ("district courts possess considerable leeway in deciding whether to entertain declaratory judgment actions"). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton*, 515 U.S. at 288.

This discretion comes from the plain text of the Declaratory Judgment Act. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added); *Envision Healthcare*, 604 F.3d at 986. Quite unlike judicially-created abstention doctrines, the discretionary right to dismiss or stay a declaratory action originates from the statute's language. *See Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010); *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, & Agric. Implement Workers of Am.*, 532 F.3d 583, 590 (7th Cir. 2008). It is less abstention than discretion. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

There are no set criteria for when a court should decline to hear a declaratory action. The *Wilton/Brillhart* doctrine is typically invoked when parallel state proceedings are ongoing. A related state suit raises concerns of comity, federalism, the efficient use of judicial resources, and fairness to the parties. *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).

That said, a parallel proceeding is not required. *Hellman*, 610 F.3d at 379 ("Even if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit."); *Envision Healthcare*, 604 F.3d at 986 (same); *see also Wilton*, 515 U.S. at 289-90 (leaving "outer boundaries of that discretion" unspoken when "there are no parallel state proceedings"); *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 392-94 (5th Cir. 2003) (collecting cases dismissing suits without parallel state proceedings). The doctrine is instead focused on whether the "declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation," still considering any parallel action that may exist and options for comparable relief in another forum. *Nationwide*, 52 F.3d at 695.

The court has weighed various relevant considerations to conclude that this case should be dismissed under the *Wilton/Brillhart* doctrine. *Nationwide*, 52 F.3d at 695. The court starts with the first

factor, an analysis of whether this "declaratory suit presents a question distinct from the issues raised in the state court proceeding." *Id.; accord Envision Healthcare*, 604 F.3d at 986 (whether the same parties are "contemporaneously litigating substantially the same issues in two fora").

This case presents a more complex analysis of parallelism than the usual side-by-side comparison of two cases. The parties have engaged in litigation on effectively three fronts—Michigan state court, this Indiana federal court, and alternative dispute resolution through arbitration/appraisal. The parallelism of proceedings must account then for the Michigan state action *and* alternative dispute resolution. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (1996) ("Parallel proceedings, one judicial, one arbitral, are governed . . . by the normal rules for parallel-proceedings abstention."); *see generally Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) (establishing normal rule); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) ("substantial likelihood that [other] litigation will dispose of all claims presented in the federal case").

The complaint articulates the issues intended for declaratory judgment, and the court obtained further clarification in oral argument. The complaint seeks a declaration of the rights and obligations under two agreements, including "timelines, valuation of shares, purchasing procedures, qualifications and competency of arbitrators and appraisers, and details regarding the arbitration and appraisal process." ECF 2 ¶¶ 26, 34. At oral argument, the corporations emphasized the need for a court to declare the qualifications of an appraiser under the C.F.R. Real Estate agreement and to decide whether the surviving shareholder (Mr. Ray) had to make an interim buyout payment pending the valuation of shares (Tr. 5-8). Mr. Ray added the specter of a future disagreement among the selected appraisers but admitted this was not a current dispute and may well not become one (Tr. 9-11). The parties could identify no other issues for declaratory judgment, much less real or immediate ones.

The parties seem to misplace these disputes. The Michigan state court has already determined that the subject of share valuation is arbitrable (or appraisable) under the contracts. With that gateway

dispute resolved, the subject of procedures remains with the arbitrator, not the court. *See Employers Ins. Co. v. Century Indem. Co.*, 443 F.3d 573, 577 (7th Cir. 2006). No party seems to recognize this in extensive briefing, but "procedural questions [that] grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (internal quotations omitted); *see also Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006) (arbitrator should decide whether one or three arbitrators should decide the dispute); *Shaw's Supermarkets, Inc. v. United Food & Com. Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir. 2003) (procedural issue of consolidation properly reserved to arbitrator); *Bell Atl. v. Comm. Workers Local 13000*, 164 F.3d 197, 201 (3rd Cir. 1999) ("procedural arbitrability issues" reserved to the arbitrator); *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) (judicial review of qualifications of arbitrators not permitted until after the arbitration award) (citing *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 748-49 (8th Cir. 1986)).

Consistent with longstanding federal policy favoring arbitration, *see, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), the question of proper procedures and other related contract terms are for the arbitrator to decide, not this court, *see Howsam*, 537 U.S. at 84. Thus, to the extent that the parties seek a declaratory judgment in this court about "details regarding the arbitration . . . process," "timelines" for that process, "qualifications and competency of arbitrators," or "purchasing procedures" bearing on share valuation (rather than consummation of the transaction), they have erred in pursuing those issues in this court. This proceeding is inherently parallel in these respects.

This conclusion does not address the appraisal process. *See* 21 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 57:8 (4th ed. 2005) (describing distinction between appraisal and arbitration); 1 Thomas H. Oehmke, *Commercial Arbitration* § 1:6 (2005) ("Arbitration and appraisal are distinct methods of dispute resolution."). Appraisal lacks the federal imprimatur of favor by statute,

*see supra*; though, as an alternative dispute resolution mechanism, it still enjoys deference under Indiana law—and that law governs these contracts. *See Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824, 831 (7th Cir. 2019) (appraisals by contract are generally binding); *FDL, Inc. v. Cin. Ins. Co.*, 135 F.3d 503, 505 (7th Cir. 1998) (interpreting Indiana law and holding that "a party who voluntarily submits to appraisal . . . is bound by the appraisal award, absent . . . manifest injustice, fraud, collusion, misfeasance or the like"); *see also PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 325 (8th Cir. 2001) (appraisal process to determine value of stock was binding by its terms); *Jupiter Alum. Corp. v. Home Ins. Co.*, 225 F.3d 868, 875 (7th Cir. 2000) (appraisal process binding even if contract has not called it binding); *Atlas Constr. Co. v. Ind. Ins. Co.*, 309 N.E.2d 810, 813 (Ind. Ct. App. 1974) (genesis of binding appraisal rule). The subject of the "valuation of shares"—which Mr. Ray and the C.F.B. entities invite this court to declare duplicatively—is squarely within arbitration and appraisal among the same parties. The Michigan state court has already declared that to be so, and to ask this court to address this issue anew in any way justifies abstention based on sound principles of comity and federalism.

Perhaps Mr. Ray and the C.F.B. entities might wiggle slightly to claim that this still leaves open the issue of an appraiser's qualifications. On that question, given the court's discretion by statute and principles of federalism, this court should not intervene. On December 9, 2019, the Michigan state court declared its "opinion that Mauricio Kohn is competent as a real estate appraiser" under the C.F.B. Real Estate buy-sell agreement. ECF 28-1. Asking this court to redetermine that issue, or even asking this court to determine the qualifications of a third appraiser should a dispute actually arise in the future on that point, given that what two courts view as acceptable qualifications could potentially conflict, is precisely the undesired interference that federal abstention was designed to avoid. The state court has the right to decide the full scope of issues before it and the effect of its decisions without interference or the potential for conflicting decisions from this court. The Michigan court has decided

the qualifications of one appraiser. This court knows of no restriction on the Michigan court's ability to decide the qualifications of a third appraiser, should the parties not be able to resolve that.

At oral argument, Mr. Ray raised the possibility that he and the businesses may not be bound by the Michigan court's decision on the appraiser's qualifications because they were not parties when the Trust moved for supervision. They noted that they have been dismissed without prejudice from the Michigan case. They claimed the Michigan court retained no jurisdiction to enforce any arbitration award. *Cf. Hernandez v. Gaucho, LLC*, 2013 Mich. App. LEXIS 326, 6 (Mich. Ct. App. Feb. 19, 2013). They argued then that the state court's ruling was effectively *void ab initio* or *dictum* that this court needn't follow, citing *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir. 1990) ("[n]o court is required to follow another court's *dicta*"). They best not be so sure. They best present that issue to the Michigan court, not this one. They have not done so.

The very invitation for this court to decide the intent and effect of the state court order raises significant issues of federalism and comity. *See, e.g., Courthouse News Serv.*, 908 F.3d at 1070 (claims directly affecting the administration of state courts run contrary to the principles of equity, comity, and federalism). This court need not delve into the propriety of the December 9 order or the referrals to arbitration and appraisal to answer the question about whether this suit would create duplicative litigation—it would—and this court remains ever-mindful of federal-state relations. The state court may have declined wholesale supervision of the arbitration and appraisal process, but it has remained readily involved to assist on an issue-by-issue basis, including it seems for any declaratory needs that might arise under the contracts.

To that point, the Michigan court has done so in a few ways already. It decided that the valuation processes are condition precedents to the Trust's claims. On May 6, 2019, it determined that the parties must proceed with arbitration and appraisal to decide valuation of the shares first. It did so recognizing that valuation would likely be determinative of the remaining claims in the Michigan

action. Although the court dismissed the state claims pending arbitration and appraisal on May 6, it did so without prejudice. The Michigan court continued to exercise ongoing supervision to permit refiling of those claims once arbitration and appraisal concluded. In particular, it tolled the statute of limitations for such claims by judicial fiat on June 21, 2019. It later decided the competency of the appraiser under the C.F.B. Real Estate agreement on December 9, 2019. Everyone seems to recognize that the state claims will be reinstated once the valuation issue has been decided.

The Michigan court's orders may well be consistent with the natural divide on questions of arbitrability (or appraisal valuation) and those ripe for judicial decision-making. Whatever the case may be, the effect of those orders is for the Michigan court. This court will not pretend even to appear to invade the state court's province to decide the intention or effect of its orders. The state court is well within its right, as it sees fit, to decide the issues surrounding arbitration or appraisal, as they might arise, without interference or commentary from this court.

The mere presence of this duplicate case here has already introduced confusion into the Michigan proceeding, and unnecessarily so. The parties have another dispute concerning whether Mr. Ray must participate in an "interim buyout"—paying that sum of money for the shares that is not in dispute and leaving the overage for later. The parties presented that issue to the Michigan state court at an August 26, 2019 hearing on the motion for supervision. The Michigan court already stated that the "equities clearly are on the [Trust's] side" and that the court "would be inclined to order that . . . at a minimum that 2.7 million dollars be paid towards this." ECF 21-10 at 28:3-4. Still, the state court indicated it would take the matter under advisement until this court determined the proper venue for that decision. *Id.* at 28:5-8. The state court thereafter entered an order on December 9, 2019 that the issue of an interim buyout was before this court since the case had been removed. ECF 28-1. The court kindly extends its appreciation to the Michigan court for its deference, but the confusion the parties have created in pursuing the suit here guides this court to decline a decision on that point under

principles of federalism. *See Hellman*, 610 F.3d at 379 ("Even if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit.").

A declaration on an interim buyout is problematic. A federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action. *See id.* at 377. The court hesitates even to make the next statement, as the Michigan court may see this differently on its merits or equities; so, for the sole purpose of evaluating whether this court should exercise its discretion under the Declaratory Judgment Act, the complaint here (as well as all briefing) cites no provision of these two contracts or any Indiana statute that the parties would ask this court specifically to interpret to decide whether an interim buyout is mandated. The Trust also offers no such contractual provision or law for the court to interpret as providing for this interim buyout. The court "must interpret the contract as written, not as it might have been written." *B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 829 (Ind. Ct. App. 2017); *accord Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 756 (Ind. 2018). The court is not in the business of making contracts under Indiana law, and will not "write a new contract for the parties or supply missing terms." *Stoler*, 77 N.E.3d at 829. The purpose of the Declaratory Judgment Act is to declare rights that exist, not to make new ones.

The court declines even more strongly to do so given the permissiveness of its declaratory powers. A "declaratory judgment is appropriate when it will 'terminate the controversy' giving rise to the proceeding." Fed. R. Civ. P. 57 advis. comm. n. (1937); *see also* 28 U.S.C. § 2201(a); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) ("The purposes of declaratory judgments are to . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal quotations omitted); *see also Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir. 1992) ("[I]t makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to try a controversy by piecemeal, or to try particular

issues without settling the entire controversy."). A declaration about an interim buyout will not terminate any controversy here. It would be an undesirable piecemeal ruling. Indeed, the parties recognize that their controversy is much bigger than a mere interim buyout. Their controversy is about the entire buyout—and the valuation of shares that drives that quarrel.

To the extent any issue remains for declaration after this discussion, it lacks the definiteness, reality, and immediacy needed to exercise jurisdiction. The phrase "case of actual controversy" within the Declaratory Judgment Act refers to those types of "Cases" or "Controversies" that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Disputes must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and they must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life*, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The specter that appraisers, once selected in the future, may by chance disagree about valuation, or the notion that the parties may happen to disagree in the future about buyout procedures once the arbitrator (for one corporation) and the appraisers (for the other corporation) value the shares, is neither real nor immediate. The Declaratory Judgment Act is not meant to keep the court "on retainer" to answer questions that may hypothetically come up. Issues for declaration must be ripe, and the possibility of future issues such as these aren't ripe. *See, e.g.*, *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. American Int'l Group*, 840 F.3d 448, 451-52 (7th Cir. 2016) ("The declaratory-judgment request regarding *future* claims . . . is unripe.").

For this federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks "gratuitous interference with the orderly and comprehensive disposition of [the] state court litigation," *Brillhart*, 316 U.S. at 495, quite aside from duplicating those issues before the arbitrators and appraisers. This factor thus favors declining jurisdiction as this declaratory suit doesn't present a question distinct from the issues raised in another relevant proceeding. *Nationwide*, 52 F.3d at 695.

The court now considers the second factor—whether the parties to the actions are identical. The core disputes reside in arbitration and appraisal where indeed the same parties are litigating. To the extent that the Michigan court has assisted with any ongoing supervision of these dispute, knowing full well that claims will return to that court once mandatory ADR has concluded, the same parties have appeared to argue how those issues should be resolved by the Michigan court. Mr. Ray and the C.F.B. entities are nevertheless not parties to the state court litigation by name. The Michigan court has said that Mr. Ray and the C.F.B. entities have no pending claims against them. *See, e.g.,* ECF 5-9 (clarifying order stating the only pending claim is against a Michigan entity). This court thus recognizes that this factor has a bit of a mixed result. Still, considering the status of the Michigan state court action and ADR processes together, the overall identity of the parties demonstrates this action presents substantial overlap.[2]

---

[2] The parties focus on the Michigan action. The Michigan court dismissed Mr. Ray and the corporations without prejudice and ordered the parties to engage in the valuation processes. Arguing Mr. Ray and the C.F.B. entities are still parties to the state litigation, the Trust cites *ITT Water & Wastewater U.S., Inc., v. L. D'Agostini & Sons, Inc.*, No. 319148, 2015 Mich. App. LEXIS 485, 9 (Mich. Ct. App. Mar. 10, 2015). *ITT* held that the trial court's dismissal was not an appealable final order because the court had not adjudicated the rights and liabilities of the parties (it merely entered a stipulated order of dismissal by the parties to enter into arbitration) and because the court had retained jurisdiction "for purposes of confirming any award rendered" in arbitration. *Id.* at 10-11. *ITT* held that the trial court anticipated future proceedings and did not view its role in the dispute as complete. *Id.* at 11; *see also Green v. Ziegelman*, 767 N.W.2d 660, 666 n.6 (Mich. Ct. App. 2009) (dismissal without prejudice was not an appealable final order when trial court retained jurisdiction to enforce arbitration award); *Hernandez v. Gaucho, LLC*, 2013 Mich. App. LEXIS 326, 6 (Mich. Ct. App. Feb. 19, 2013) (same). These cases aren't on all fours with this case because the Michigan court here never expressly retained jurisdiction, though it has continued to exercise its jurisdiction to assist with the alternative dispute resolution processes.

The next factor is troubling. *See Nationwide*, 52 F.3d at 695. This declaratory action will merely amount to duplicative and piecemeal litigation, and will not serve a useful purpose in clarifying the legal obligations and relationships among the parties. *See Tryer v. City of S. Beloit*, 456 F.3d 744, 755 (7th Cir. 2006) (quoting *LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)) (piecemeal or duplicative litigation occurs when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results"). Review of an issue the state court has decided since the inception of this federal case might not compromise this court's jurisdiction, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282 (2005) (holding jurisdiction does not vanish if a state court reaches judgment on the same or related question while the federal case is pending); *see also TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (same), but it does raise concerns about comity and the proper allocation of judicial resources, *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (emphasizing that comity underlies *Wilton/Brillhart*); *Tryer*, 456 F.3d at 755 ("the possibility exists that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums") (quoting *LaDuke*, 879 F.2d at 1560). Comity implies more than deference to the opinion of equally capable state courts; it places "substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question." *Mast Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900). This third factor weighs heavily against the court exercising jurisdiction here.

The fourth factor—whether comparable relief is available in another forum or at another time—likewise favors abstention. *See Nationwide*, 52 F.3d at 695. The court sees no reason why the Michigan court is incapable of issuing comparable relief. Mr. Ray and the C.F.B. entities argue that the Michigan internal affairs doctrine precludes the Michigan court's declaratory role; however, this seems to be an inaccurate understanding of the doctrine. One case, *Wojtczak v. Am. United Life. Ins. Co.*, 292 N.W. 364, 366 (Mich. 1940), held that Michigan courts "will not take jurisdiction" where the act

complained of affects "the management of the internal affairs" of a foreign corporation. The Michigan Court of Appeals recently clarified that "*Wotjtczak* simply recognizes that the choice-of-law considerations implicated by the internal-affairs doctrine should guide a trial court's discretion in determining whether it ought to decline jurisdiction over certain actions involving foreign corporations that would be more appropriately adjudicated in another forum." *Daystar Seller Fin., LLC v. Hundley*, 931 N.W.2d 15, 19 (Mich. Ct. App. 2018), *appeal denied*, 928 N.W.2d 211 (Mich. 2019). Understood this way, Michigan courts are not precluded from hearing claims concerning the internal affairs of a foreign corporation. Indeed, more than that, the state court here has exercised jurisdiction over certain declarations already and has expressed its willingness to hear other declaratory issues if this court abstains. *See* ECF 17-5 at 28:20-23 ("And if [the federal court is] inclined to give it back to me, I guess that'll be my job."). There is nothing precluding the plaintiffs from bringing this declaratory action before the Michigan court for any ripe issue, and where any confusion or concerns regarding prior orders could be properly addressed. What is more, nothing prevents the parties from seeking relief from the arbitrators for procedural issues that need be decided.

In addition to these four factors, the court notes a consideration unique to this case that weighs in favor of abstention. *See Nationwide*, 52 F.3d at 692 (a federal court should consider four factors "among other matters"). All parties agree that this court is not the proper forum for adjudicating these claims. The parties disagree as to what the proper court is—Mr. Ray and the C.F.B. entities advocating for the Indiana Commercial Court and the Trust advocating for the Michigan court—but all parties concur that this case presents an undesired federal-state entanglement. Declining jurisdiction to avoid gratuitous interference with state and arbitral proceedings undoes this entanglement. *See Brillhart*, 316 U.S. at 495. Thus, with these concerns, the court declines to exercise jurisdiction over this declaratory judgment action.

The court must decide whether to stay or dismiss this action. *See Envision Healthcare*, 604 F.3d at 986 ("district courts possess significant discretion to dismiss or stay claims seeking declaratory relief"). While the court should be cautious dismissing a case, *see Wilton*, 515 U.S. at 288 n.2, courts routinely do so under the *Wilton/Brillhart* doctrine to assure the conservation of judicial resources and promote efficiency. *See, e.g., Envision Healthcare*, 604 F.3d at 987 (affirming the district court's dismissal, rather than issuing a stay, under *Wilton/Brillhart*); *Secura Ins. v. Komacko*, 2013 U.S. Dist. LEXIS 99400, 10 (N.D. Ind. July 16, 2013) (Lozano, J.) (dismissing case rather than issuing a stay). The circumstances of this case, including the unnecessary interjection of confusion into the Michigan state proceeding already, the other available fora for decisions, and the lack of ripeness to any lingering issue, justify dismissal. Because the dismissal is without prejudice, the parties can still return to this court in the event the state case or alternative dispute resolutions, "for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. On the current record, however, the court emphasizes that it foresees no issues that the Michigan state court cannot decide.

## CONCLUSION

The parties all wish for this court to abstain from exercising its jurisdiction. The court agrees with the Trust that there are sufficient reasons to decline jurisdiction under the Declaratory Judgment Act and dismiss the case. Because the claims here don't present an issue of overriding public policy and aren't the type around which Indiana has built a sophisticated regulatory regime for uniform review, the court DENIES the plaintiffs' motion to remand (ECF 13). Because this action lies outside the meaningful use of the Declaratory Judgment Act and undermines sound principles of comity, federalism, and the wise allocation of judicial resources, the court GRANTS the defendant's motion to dismiss or stay (ECF 4) and DISMISSES this case without prejudice.

SO ORDERED.

March 11, 2020                    s/ Damon R. Leichty
                                 Judge, United States District Court